EXHIBIT 1

TO

VERIFIED COMPLAINT IN REM


AFFIDAVIT OF CHRISTOPHER J. MAGA

# AFFIDAVIT OF Christopher J. Maga
# IN SUPPORT OF COMPLAINT

1. I, Christopher J. Maga, having been duly sworn upon oath, state as follows:

*Affiant's Background*

2. I am a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration ("DEA"), currently assigned to the Nashville District Office. I have been employed as a DEA Task Force Officer since October 2010. Prior to my employment as a DEA Task Force Officer, I was a sworn law enforcement officer with the Columbia Police Department in Columbia, Tennessee. I have approximately ten years of law enforcement experience. During my law enforcement career, I have received over 350 hours of training related specifically related to investigating narcotics and money laundering crimes, including such courses as Money Laundering Investigations, Basic Narcotics School, Interdiction Training, Undercover Operations Training, Financial Investigative Techniques, Methamphetamine Investigations, Pharmaceutical Investigations, Emergency Narcotics Operations and Wiretap (T3) training. During my tenure as a Task Force Officer, I have participated in numerous narcotics and drug-related investigations involving violations of federal and state narcotics law. The federal crimes I am assigned to investigate include, but are not limited to violations of 21 U.S.C. §§ 841 and 846 (drug trafficking), and 18 U.S.C. §§ 1956 & 1957 (money laundering).

3. I am familiar with the following statutes pertinent to this affidavit:

    a. 21 U.S.C. § 841(a)(1) makes it a violation to ". . . knowingly or intentionally – to manufacture, distribute, or dispense, a controlled substance. "

    b. 21 U.S.C. § 846 makes it a violation to ". . . attempt or conspires to commit [a violation of 21 U.S.C. § 841(a)(1)]"

    c.    21 U.S.C. § 881(a) provides that "[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them: … (6) "All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by an person in exchange for a controlled substance …, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation [of drug trafficking]."

## *Item sought to be forfeited*

4.    I present this Affidavit in support of the Verified Complaint In Rem seeking forfeiture pursuant to 21 U.S.C. § 881(a)(6) of a diamond wristwatch bearing serial number CC497341 ("Defendant Property") which was found abandoned in the grass in the area of Vine Hill Road, Nashville, Tennessee.

## *Basis of Information*

5.    The information in this affidavit and the basis for my belief that the Defendant Property is subject to forfeiture was obtained through my personal observations, training and experience, interviews with law enforcement officers, review of law enforcement and State of Tennessee Probation and Parole reports and records, recorded audio conversations and recorded video. I have not included every item of information known to me concerning the Defendant Property and the facts surrounding this Affidavit, but only those relevant to a determination that the Defendant Property is subject to forfeiture.

## *Summary*

6.    On May 11, 2012, convicted drug felon Martiez Cordell Bright ("Bright"), went to a meeting to sell cocaine, which ultimately resulted in Bright fleeing in his vehicle and then on foot, from law enforcement. As he fled, Bright abandoned the Defendant Property as well as the contents of the vehicle he was driving, including a bullet-proof vest, two cellular telephones, $8,000 in United States currency, and 16 rounds of .45 ammunition.

*Facts*

7. On May 11, 2012, in a recorded phone call, Bright engaged in an arrangement to sell one kilogram of cocaine in the area of public housing near Vine Hill Rd, Nashville, Tennessee, where Bright had conducted illegal narcotics transactions in the past.

8. Bright arrived at the designated place in a Nissan sedan ("Nissan"). Bright was the sole occupant in the Nissan.

9. When Bright contacted his buyer, Metropolitan Nashville Police Department ("MNPD") units moved in and attempted to take Bright into custody, but Bright fled in the Nissan at a high rate of speed, driving over spike strips which MNPD had laid out.

10. Bright continued to flee, ultimately wrecking, abandoning the vehicle and continuing his flight from law enforcement on foot.

11. Bright was arrested at Wade Street and 11th Avenue, Nashville, Tennessee, after a brief fight and taken into custody.

12. Bright had approximately 15.2 grams of a substance containing cocaine on his person.

13. Law enforcement recovered the following drug evidence in the area of the wreck and subsequent arrest of BRIGHT:

    a. An open plastic bag containing 112 grams cocaine was located on the south side of the road on Wedgewood near Lindell Ave. There were scuff and scatter / residue marks on the pavement indicating the bag skidded along the ground before stopping on the south side of the street. This is consistent with the bag having been thrown from the driver's side of a vehicle travelling westbound. The size of the bag would have been large enough to contain a kilogram of compressed cocaine. A bag with 151 grams of marijuana was also located in a yard along the path of Bright's flight. Bright told the arresting officers that he had thrown items away during the foot pursuit.

14. Law enforcement recovered the following drug evidence in the vehicle:

    a. A box of .45 caliber ammunition containing 16 rounds, a bulletproof vest, two cellular telephones and $8,839 of United States currency in the vehicle. The currency was

bundled in rubber bands and located in a paper bag on the vehicle floorboard.

15. Law enforcement recovered the Defendant Property abandoned in the grass along the path of Bright's flight.

16. The Defendant Property was appraised by Brentwood Jewelry and Gifts, Inc. as follows:

    a. One (1) Gents Cartier wrist watch, model Pasha serial # CC497341 with an after-market diamond bezel and diamond bracelet. The bezel has a double row of invisible-set Princess-cut diamonds, approximate diamond weight 10 carats. The bracelet is invisible-set with approximately 30 carats of Princess-cut diamonds, approximate total diamond weight in the watch is 40 carats. FAIR MARKET VALUE = $35,000.

17. Law enforcement recovered the key to the Taurus and $839 United States currency from Bright's person.

18. A review of law enforcement records reveals that Bright's criminal history includes, but is not limited to:

    a. November 20, 2007 - Davidson County Criminal Court Case Number 2007-B-1026, Division 6, a felony conviction for possession of a controlled substance, over 5 grams, with intent to sell for which Bright received an 8 year probation sentence, and was ordered to forfeit a weapon;

    b. May 16, 2008 - Probation revocation for a drug arrest;

    c. June 19, 2008 - Davidson County Criminal Court Case Number 2008-I-612, a felony conviction for sale of cocaine less than .5 grams for which Bright received a three 3-year sentence consecutive to his previous Division 6 sentence;

    d. June 9, 2009 - Released from incarceration, placed on state probation with a release date of October 13, 2008;

    e. June 11, 2009 - Conviction for drugs;

    f. February 23, 2011 - Probation violation for which Bright received a 5-year sentence, suspended to probation;

    g. May 11, 2012 – Arrested for possession of cocaine with the intent to sell.

19. On May 16, 2012, Bright was indicted by a federal grand jury in the Middle District of Tennessee, Nashville Division Case No. 3:12-00091, for possession of crack cocaine with intent

to sell within 100 feet of a public housing facility in violation of 21 U.SC. §§ 841(a)(1) and 860, and of being a convicted felon in possession of ammunition.

20. Bright reported employment in 2009 and 2010 for Solid Rock Carpet and Building Care where he earned less than $250.00 every two weeks.

21. Bright reported employment in 2011 and 2012 for KH Mobile Wash, where he earned approximately $8/hour as an Auto Detailer. The owner of KH Mobile Wash reported that "working hours are often unstable due to weather and rain…".

22. Based on the facts of the case including the drug evidence recovered, the recordings, Bright's prior criminal history, employment record, lack of legitimate income sufficient to purchase a $35,000 piece of jewelry, the location of the Defendant Property, and my training and experience, it is my belief that Bright abandoned the Defendant Property while he was being pursued by law enforcement because the Defendant Property is proceeds of drug trafficking.

23. Based on my training and experience, and the facts of this case including as set forth in this Affidavit, it is my belief that the Defendant Property was obtained in exchange for a controlled substance, or was purchased with proceeds of drug trafficking.

### *The Defendant Property is subject to forfeiture*

24. The facts support a reasonable belief that there is a substantial connection between the Defendant Property and activity in violation of 21 U.S.C. § § 841(a)(1), specifically the possession of a controlled substance with intent to distribute.

25. Therefore the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Further Affiant sayeth not.

                                           _____
                                           Christopher J. Maga
                                           Task Force Officer, Drug Enforcement Administration

Sworn to before me, and subscribed in my presence this 28th day of September, 2012.

                                           _____
                                           Notary Public

**My Commission Expires:**
**June 21, 2016**

My commission expires: _____